UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**D-2**

| | |
|---|---|
| GEORGE HORATTAS, ANDREW PHYTHIAN, DIANNE PHYTHIAN, ROBERT COCHRAN, and CONSTANCE COCHRAN, | Case No. 1:07-cv-122 |
| Plaintiffs, | HONORABLE PAUL L. MALONEY |
| v. | |
| CITIGROUP FINANCIAL MARKETS INC. a/k/a SMITH BARNEY CITIGROUP[1], MARK A. SINGER, FONDREN INTERNATIONAL, INC., INDIAN NATION LLC d/b/a CRS MANAGEMENT OF MICHIGAN LLC, SUMMERFIELD LLC, QUEST MINERALS AND EXPLORATION INC., CLAYTON SMART, STEPHEN W. SMITH, CHRISTINE M. HEISEY, ERMA L. HUCKSTEP, and CRAIG BUSH, | |
| Defendants. | |

## OPINION and ORDER

**Dismissing the Complaint With Prejudice
Denying as Moot Zausmer's Motion to Intervene in Place of the Named Plaintiffs
Terminating Case**

This putative class action was removed from state court. It comes before the court on

defendant Citigroup Financial Market, Inc. d/b/a Smith Barney Citigroup ("Citigroup")'s motion

to dismiss. In addition, non-party Zausmer, the conservator of the cemeteries and management

---

[1] This defendant states that its proper legal name is Citigroup *Global* Markets, Inc. *See* July 30, 2007 Supp. Br. in Support of Smith Barney's Motion to Dismiss Pursuant to SLUSA, at 1.

companies at issue, has filed a motion to intervene and a motion to dismiss the named plaintiffs as parties. The parties disagree over whether the plaintiffs' claims are governed by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77 *et seq.*, and, if so, whether that Act requires dismissal or merely remand to state court. For the reasons that follow, the court will grant Citigroup's motion to dismiss the complaint with prejudice.

## I.     BACKGROUND

George Horattas and the other four named plaintiffs (collectively "Horattas") are all Michigan residents[2] who purchased burial rights and burial plots in Oakview Cemetery or Cadillac Memorial Gardens, *see* Comp. ¶¶ 5-7. both of which are apparently located in Michigan. Defendant Craig Bush owned both cemeteries until August 2004, when he sold them to defendant Indian Nation LLC d/b/a CRS Management of Michigan LLC ("Indian Nation"). *Id.* ¶ 11. At least at the time the complaint was filed, defendants Clayton Smart and Stephen Smith owned 95% and 5% of Indian Nation, respectively. *Id.* ¶ 11.

The Michigan Cemetery Regulation Act requires cemeteries to deposit 15% of the gross proceeds from the sale of burial rights into an irrevocable endowment care fund, to ensure that the burial plots and the cemeteries generally are properly maintained in perpetuity. MCL §§ 456.35a,

---

[2]

The existence of diversity jurisdiction is not before the court, so the court intimates no opinion as to whether the plaintiffs are Michigan *citizens*. For purposes of diversity jurisdiction, residency does not necessarily prove citizenship. *See, e.g., Deasy v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 47 F. App'x 726, 728 (6th Cir. 2002) ("To establish the 'citizenship' required for diversity jurisdiction, Deasy must show more than mere Tennessee residence. He must show that Tennessee is his domicile. To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere.") (citations omitted).

456.107a, and 456.536(1); *see, e.g., Cemetery Comm'r v. Burcham*, No. 201437, 1998 WL 1988776 (Mich. App. Nov. 17, 1998) ("Plaintiff essentially alleged that defendant [cemetery] had knowingly made false representations to plaintiff's auditor with respect to the value and financial status of certain statutorily required trust funds."), *app. denied*, 610 N.W.2d 921 (Mich. 2000). By August 2004, the two cemeteries at issue had accumulated $41 million in irrevocable endowment care funds. *See* Comp. ¶ 2.

According to the complaint, by September 2006, new owner Indian Nation had depleted all of those funds, in violation of Michigan law. Horattas alleges that Indian Nation spent the funds approximately as follows: $12 million to finance Indian Nation's purchase of the cemeteries themselves; $26 million as a "loan" to an oil and gas exploration venture owned and operated by defendant Smart's wife and her aunt (defendant Quest Minerals and Exploration Inc.); $25 million as an "investment" in defendant Fondren International Inc.; and $7 million as an investment in what he describes a "speculative, high-risk offshore hedge fund in the Cayman Islands." Comp. ¶ 2. The other defendants thus far not named in this opinion allegedly served as investment advisors, "wire" agents, or other participants in the transfer, investment, or expenditure of the endowment funds. *See* Comp. ¶¶ 8-17.

Namely, Horattas alleges that in August and September 2004, the cemeteries' trust accounts were transferred from LaSalle Bank to Citigroup. *See* Comp. ¶ 8. The defendants elaborate that shortly after Citigroup acquired the cemeteries' accounts, various securities were sold from these accounts in late September and early October 2004, including shares in mutual funds and direct shares in companies such as Bristol-Myers Squibb, Texas Instruments, Wells Fargo, GE, etc. *See* Def. Citigroup's Supp. Br. in Support of Mot. to Dis. at 6 and Ex. A. Horattas alleges that these

security sales were done for improper and illegal purposes, and that Citigroup and the other defendants breached their duty to act as a prudent investor would. Specifically, Horattas alleges that Citigroup and the other defendants failed to exercise reasonable caution with the trust funds, failed to diversify their investments, and recommended unsuitable speculative and high-risk investments. Comp. ¶ 54.

## II.     PROCEDURAL HISTORY

In December 2006, the State of Michigan's Cemetery Commissioner filed a complaint in the Ingham County Circuit Court ("the state court"), seeking injunctive relief and the appointment of a conservator for the cemeteries. Comp. ¶ 2. The state court appointed Mark Zausmer as conservator of 28 cemeteries, including those in which the named plaintiffs bought their burial rights and plots, and their management companies.

Horattas brought suit in that court in January 2007, asserting two state-law causes of action against the defendants: breach of fiduciary duty and violation of the prudent-investor rule (MCL § 700.1501 *et seq.*), *see* Comp. ¶¶ 43-47; and conversion and embezzlement of the $61 million in irrevocable-endowment care funds, *see* Comp. ¶¶ 58-62. Horattas's third count seeks to impose a constructive trust on those funds to prevent unjust enrichment. *See* Comp. ¶¶ 63-68. In March 2007, defendants Citigroup and Mark Singer filed a notice of removal, and all the other defendants filed timely notices consenting to the removal. Bush filed an answer to the complaint.

In April 2007, conservator Zausmer moved to intervene and to dismiss Horattas and the other named plaintiffs as parties, contending that as the court-appointed conservator, he is the only proper party to bring an action for violation of the Michigan Cemetery Regulation Act and that Horattas

*et al.* have no right to do so.  Horattas moved to transfer the case to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

Also in April 2007, defendant Citigroup joined in conservator Zausmer's motion to substitute Zausmer for Horattas *et al.* as parties plaintiff, or alternately, to dismiss the complaint with prejudice under Rule 12(b)(6) (failure to state a claim) as precluded under SLUSA.

In June 2007, this court denied Horattas's motion for transfer of venue on the ground that Horattas had not shown that the case could be maintained in the Eastern District.  *See Horattas v. Citigroup Fin. Markets, Inc.*, No. 1:07cv122, 2007 WL 1876470 (W.D. Mich. June 28, 2007) (Hon. Wendell A. Miles, Senior D.J.).[3]  This court noted that if SLUSA applied, the case could not be maintained in federal district court in the Eastern District of Michigan (or in any federal district court, for that matter, due to the "local controversy" exception).  *Id.* at *2.  Specifically, if SLUSA applies and Horattas's putative class claims satisfy its criteria, a federal district court must dismiss the class claims with prejudice. *Id.* at *3.  If SLUSA applies but the state-court class action does *not* satisfy all its criteria, a federal district court must remand the class claims to be pursued in state court.  *Id*.  The court ordered the parties to file briefs as to whether SLUSA applies and, if so, whether SLUSA requires remand to state court or outright dismissal.  *Id.*  The parties did so.

### III.    LEGAL STANDARD:

#### A.    Motion to Dismiss for Failure to State a Claim, FED. R. CIV. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Horattas must show that his complaint alleges facts which, if proved, would

---

[3]The case was reassigned from Judge Miles to this judge in August 2007.

entitle him to relief. *First American Title Co. v. Devaugh*, 480 F.3d 438, 443 (6th Cir. 2007) (Griffin, J.) (citing *S.E. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671 (6th Cir. 2006) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957))). The complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.[4] *Weisbarth v. Geauga Park Dist.*, No. 06-4189, – F.3d –, 2007 WL 2403659, at *2 (6th Cir. Aug. 24, 2007) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)). The court must

---

[4]

For decades, the federal courts followed the Supreme Court's statement in *Conley v. Gibson* that 12(b)(6) dismissal is proper only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *See, e.g., Weiner*, 108 F.3d at 88. Recently, however, the Supreme Court revisited *Conley*'s "no set of facts" formulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombley*, – U.S. –, 127 S.Ct. 1955, 1974 (2007). *Twombley* held that the venerable phrase had "earned its retirement," instead dismissing the plaintiff's complaint "because it did not contain facts sufficient to 'state a claim to relief that is plausible on its face.'" *Weisbarth*, 2007 WL 2403659 at *3 (quoting *Twombley*, – U.S. at –, 127 S.Ct. at 1974).

Our circuit recently noted that uncertainty persists as to the intended scope of the Supreme Court's decision in *Twombley*. *See Weisbarth*, 2007 WL 2403659 at *3 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007)). Our circuit discussed a Second Circuit decision which concluded that *Twombley* "'is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible plausibility standard, which requires a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.'" *Weisbarth*, 2007 WL 2403659 at *3 (quoting *Iqbal*, 490 F.3d at 157-58) (other internal quotation marks omitted). Under the circumstances presented in *Weisbarth*, however, our circuit found it unnecessary to decide whether that is the correct reading of the Supreme Court's intent in *Twombley*. *Weisbarth*, 2007 WL 2403659 at *3.

For district-court decisions applying *Twombley* in our circuit, *see, e.g.:*

*Fisher v. Caruso*, Nos. 03-71804 & 06-11110, – F. Supp.2d –, 2007 WL 1827395, at *3-4 (E.D. Mich. June 22, 2007) (Cleland, J.);
*Williams v. Hopkins*, No. 06-14064, – F. Supp.2d –, 2007 WL2572406, at *2-3 (E.D. Mich. Sept. 6, 2007) (Borman, J.);
*Kyle v. Sims*, No. 06-12185, – F. Supp.2d –, 2007 WL 2463312, at *3 (E.D. Mich. Aug. 30, 2007) (Edmunds, J.).
*In re General Motors ERISA Lit.*, No. 05-71085, 2007 WL 2463233, at *2-3 (E.D. Mich. Aug. 28, 2007) (Edmunds, J.).

accept all well-pleaded factual allegations as true. *Id.*[5]

In the SLUSA context, this means that the court must construe the complaint in the light most amenable to the conclusion that the complaint is not subject to SLUSA preclusion (i.e., as discussed below, that Horattas's class claims should be merely remanded to state court rather than dismissed with prejudice). *See generally Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005) (applying Rule 12(b)(6) standard in SLUSA context), *overruled on other grounds*, 547 U.S. 71 (2006); *cf. PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 683 (6th Cir. 2004) ("The PSLRA does not changed the Rule 12(b)(6) maxim that when an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.") (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001)).

   *B.*     *SLUSA*

The Private Securities Litigation Reform Act of 1995 placed limits on federal securities class actions. *Merrill Lynch v. Dabit*, 547 U.S. 71, –, 126 S.Ct. 1503, 1510 (2006). To avoid those limitations, however, some plaintiffs began to file securities class actions in state court. *Id.*, 126 S.Ct. at 1511. To prevent plaintiffs from circumventing the PSLRA's limitations, Congress in 1998

---

[5]

*Twombley* did not change the principle that, on a motion to dismiss for failure to state claim, a court must accept a plaintiff's well-pleaded factual allegations as true when evaluating a motion to dismiss for failure to state a claim. *See* our circuit's post-*Twombley* decision in *Nat'l Surety Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 754 (6th Cir. 2007) ("National Surety's complaint alleges the following facts, which this court must accept as true . . . .") (citation omitted).

Nor did *Twombley* change the principle that, on a motion to dismiss for failure to state claim, a court must "construe the complaint in the light most favorable to the plaintiff . . . ." *US ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, No. 06-5096, – F.3d –, 2007 WL 2492439, at *5 (6th Cir. Sept. 6, 2007) (citing *Twombley*, – U.S. at –, 127 S.Ct. at 1974).

enacted SLUSA. *Id.* at 1510-12.

SLUSA has a preclusion provision[6] and a removal provision.[7] The preclusion provision provides that private state-law "covered" class actions alleging untruth or manipulation in the purchase or sale of a "covered" security may not be maintained in any state or federal court. *Kircher*, 126 S.Ct. at 2150-51. The Supreme Court has interpreted SLUSA's preclusion provision broadly. It does not matter whether the plaintiffs (who are asserting only state-law claims) would otherwise have a remedy under federal law: "the statute also [precludes] state-law class-action claims for which federal law provides no private remedy." *Dabit*, 126 S.Ct. at 1507.

---

[6]The preclusion provision states, in its entirety,

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
>
> (1)   an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2)   that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b). As the Supreme Court has pointed out, the preclusion provision is sometimes erroneously called a preemption provision. "[T]he Act, however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class action device in federal as well as state court." *Kircher*, 126 S.Ct. At 2151 n.1 (citing *Dabit*, 547 U.S. at –, 126 s.Ct. At 1514 ("The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist.")).

[7]The removal provision states, in its entirety,

> Any covered class action brought in any State court involving a covered security, as set forth in subsection (b) of this section, shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b) of this section [the preclusion provision].

15 U.S.C. § 77p(c).

SLUSA's removal provision authorizes removal to federal court of any "covered" class action brought in state court involving a "covered" security. *Kircher*, 126 S.Ct. at 2151. Once a covered class action involving a covered security is thus removed, the federal district court must then dismiss the putative class claims with prejudice.

## IV. DISCUSSION: Count Three

The third and final count of the complaint, Constructive Trust, alleges that all the cemetery defendants and the investment defendants collectively "obtained $61 million in irrevocable endowment care funds through fraud, *misrepresentation*, concealment, breach of fiduciary relationship, and other similar circumstances." Comp. ¶ 64.

But a constructive trust is an equitable *remedy*, *see Crosby v. Bowatder, Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc.*, 382 F.3d 587 (6th Cir. 2004), not a claim in its own right. *See In re Amcast Indus. Corp.*, 365 B.R. 91 (Bankr. S.D. Ohio 2007) ("Requests for an accounting and imposition of a constructive trust do not describe independent causes of action . . . .")*; accord One-on-One Enters., Inc. v. Caruso*, 668 F. Supp. 693, 696 n.1 (D.D.C. 1987) ("Although plaintiffs pleaded a fifth count of constructive trust, it is a remedy, not a claim upon which relief may be granted."), *aff'd*, 848 F.2d 1283 (D.C. Cir. 1988).

Thus, if counts one and two do not state claims that justify SLUSA removal (and trigger SLUSA preemption), count three cannot do so on its own.[8] Accordingly, the question before the

---

[8]

*See Bd. of Trustees, Sheet Metal Workers Nat'l Pension Fund v. Ill. Range, Inc.*, 186 F.R.D. 498 (N.D. Ill. 1999), *adopted in part and rejected o.g. in part*, 71 F. Supp.2d 864 (N.D. Ill. 1999):

> [Defendants argued] that Count V, Plaintiffs' Claim for a constructive trust, should be dismissed because a constructive trust is a remedy, not a claim. Plaintiff agreed

court technically is whether SLUSA applies to claims *one and two*. Of course, the court may still consider the allegations listed under "Count Three" in determining the nature of the claims asserted in the first two counts.

## V.      DISCUSSION: Counts One and Two

SLUSA defines a "covered class action" as one that seeks damages on behalf of more than fifty people, and a "covered security" as one that was traded nationally and listed on a regulated national exchange. *Kircher*, 126 S.Ct. at 2151 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S.Ct. 1503, 1512 (2006) ("*Dabit*")); 15 U.S.C. § 78bb(f)(5)(E) (adopting definition of "covered security" found in paragraphs (1) and (2) of section 18(b) of the Securities Act of 1933).

First SLUSA Criterion, "Covered Class Action", is Satisfied.

Horattas seeks damages on behalf of more than fifty people, *see* Comp. ¶ 1 ("on behalf of thousands of Michigan consumers" among whom common questions of law and fact predominate as required by FED. R. CIV. P. 23), so the court finds that this is a covered class action under SLUSA.

---

and voluntarily withdrew its constructive trust count. However, Plaintiff is free to argue [for] a constructive trust as a remedy in the event that it prevails on claims for which such a remedy would be appropriate. *Fujisawa Pharm. Co. v. Kapoor*, 16 F. Supp.2d 941, 950 (N.D. Ill. 1998).

186 F.R.D. at 499 n.1. *Accord Radenhausen v. Doss*, 819 So.2d 616, 620 (Ala. 2000) (""The [defendants] correctly assert that a constructive trust is an equitable remedy; and a request to impose such a trust is not a cause of action that will stand independent of some wrongdoing.") (citing *Gulf States Steel, Inc. v. Lipton*, 765 F. Supp. 696 (N.D. Ala. 1990) ("the court's research reveals no case in any jurisdiction [holding] that constructive trust constitutes a cause of action.")).

*See* 15 U.S.C. § 77p(b).

Second SLUSA Criterion, "Covered Security," is Satisfied.

The next question is whether the shares bought and sold in the cemeteries' Citigroup trust accounts were "covered securities" (at the time of the transactions) as defined by SLUSA. The court finds that they were. SLUSA defines covered security broadly to include

> a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under this subchapter pursuant to rules issued by the [Securities and Exchange] commission under section 77d(2) of this title.

15 U.S.C. § 77p(f)(3). In turn, the cross-referenced provision, title 15 U.S.C. § 77r(b)(1) and (2), defines covered security to include, among other things, any security listed on a national stock exchange and any security issued by an investment company that is registered under the Investment Company Act of 1940. *See, e.g., Hines v. ESC Strategic Funds, Inc.*, No. 3:99cv530, 1999 WL 1705503 (M.D. Tenn. Sept. 17, 1999) (because security in question was issued by defendant and defendant was a registered investment company, it was a covered security under SLUSA).

It is undisputed that many of the stocks and mutual funds sold in and from the cemeteries' Citigroup trust accounts, were shares in companies that were listed on a national stock exchange. Specifically, the court takes judicial notice[9] that AIG, Pfizer, Bristol-Myers Squibb, Texas

---

[9]

*See generally* FED. R. EVID. 201(d) and (f) (district court *must* take judicial notice if requested by a party and provided with the necessary information, and may do so at any stage of the case); *Scotty's Contracting & Stone, Inc. v. US*, 326 F.3d 785, 790 n.1 (6th Cir. 2003) ("[J]udicial notice of a fact is generally only appropriate when there is no dispute regarding the fact.") (citation omitted); *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("judicial notice is available only for 'adjudicative facts,' or the 'facts of the particular case', as opposed to 'legislative facts',

Instruments, General Electric, Bank of New York, Hospira, Viacom, and Wells Fargo are listed on the New York Stock Exchange (NYSE), and that Intel, Oracle, and the NASDAQ 100 Trust tracking stock are listed on the NASDAQ exchange.[10]  *See Azzolini v. CorTS Trust II for Provident Fin. Trust I*, No. 1:03cv1003, 2005 WL 3448053, at *6 n.5 (E.D. Tenn. Dec. 14, 2005) (Collier, C.J.) (taking judicial notice of the fact that "[t]he CorTS I Certificates trade on the New York Stock Exchange under the symbol 'KSA'" and other facts about that stock); *Picard, Inc. Profit Sharing Plan v. Perrigo Co.*, No. 1:95cv141, 1996 WL739170, at *3 (W.D. Mich. Sept. 27, 1996) (Quist, J.) (taking judicial notice of fact that defendant's stock "was actively traded on the NASDAQ National Market System, and that [it] had a trading volume of 350m000 [shares] per day during the class period"); *King World Productions, Inc. v. Fin. News Network, Inc.*, 660 F. Supp. 1381, 1387 (S.D.N.Y. 1987)

---

which are facts 'which have relevance to legal reasoning . . . , whether in the formulation of a legal principle or a ruling by a judge, or in the enactment of a legislative body.'") (quoting FED. R. EVID. 201, Adv. Comm. Note (1972)).

Finding and considering a fact via judicial notice does not convert a motion to dismiss for failure to state a claim into a motion for summary judgment.  *See New England Health Care Employees Pension Fund v. Ernst & Young LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or otherwise appropriate for the taking of judicial notice.") (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated o.g. by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

[10]

The complaint does not specify the securities that were held in or sold from the cemeteries' Citigroup trust accounts, but Horattas has not disputed the list of such securities that is contained in defendant Citigroup's supplemental brief.  *See* Def. Citigroup's Supp. Br. in Support of Mot. to Dis. at 2 n.1 ("Exhibit A [the list of securities transferred into the accounts and then sold] is derived entirely from the [Citigroup] monthly account statements for the Cemeteries' trust accounts.  True and accurate copies of these account statements are attached as exhibits to the accompanying declaration of Susan J. Steinthal, a Director and Counsel at [Citigroup].").

(taking judicial notice of the fact that the stock was traded on NASDAQ).*[11]*

The court finds that the assets in the cemeteries' Citigroup trust accounts other than shares of individual stocks were covered securities as well. The cemeteries' holdings in the Munder mutual funds and cash held in Smith Barney money-market funds are covered securities because those funds are "issued" by the Munder Series Trust and Smith Barney Money Funds, Inc., respectively, both of which are registered as investment companies under the Investment Company Act of 1940. *Cf. In re Franklin Mutual Funds Fee Lit.*, 388 F. Supp.2d 451, 471 (D.N.J. 2005) (finding mutual-fund shares to be covered securities); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp.2d 993, 1000 (C.D. Cal. 2002) (finding money-market fund to be a covered security).

Third and Fourth SLUSA Criteria are Satisfied.

The third SLUSA criterion is satisfied because Horattas originally filed this action in state court. The fourth SLUSA criterion is satisfied because the face of the complaint shows, and the defendants have not disputed, that Horattas's claims are predicated solely on state law, namely the statutory and common law of Michigan.

Fifth SLUSA Criterion.

---

[11]

*Cf. D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp.2d 719, 749 (E.D. Mich. 2003) (taking judicial notice of stock's price on days during relevant period; "The Court may take judicial notice of well-publicized stock prices and market trends. . . .")), *aff'd*, 133 F. App'x 994 (6th Cir. 2005); *In re Keithley Instruments, Inc. Secs. Lit.*, 268 F. Supp.2d 887, 896 (N.D. Ohio 2002) (taking judicial notice of stock prices and market indices; "In securities-fraud actions, courts will also examine the other information that was publicly available to reasonable investors . . . .") (citation omitted); *In re Goodyear Tire & Rubber Co. Derivative Lit.*, Nos. 1:03cv2180 *et al.*, 2007 WL 43557, at *8 (N.D. Ohio Jan. 5, 2007) (taking judicial notice of publicly-filed documents showing how many shares of particular stock a person owned).

>Horattas contends that SLUSA preemption does not apply because
>
>>the Complaint does not allege that Citigroup made an untrue statement, omitted a material fact, or used a manipulative or deceptive device, nor that any such actions were performed in connection with the purchase or sale of a covered security. Instead, Plaintiffs allege that Citigroup affirmatively participated in and facilitated a scheme to misappropriate and embezzle the $61 million from the trust funds.
>>
>>Plaintiffs recognize that Citigroup may have, at some point, bought or sold securities during their relationship with Summerfield, LLC, Clayton Smart, Craig Bush, and Quest Minerals and Exploration, Inc., but those transactions are only tangentially related to the claims in this case and were not part of the allegations in the Complaint. * * * Instead, the Complaint focuses on the raiding of the irrevocable[-]trust funds and the conversion and/or embezzlement of the funds, and investment in off-shore hedge funds which may or may not have held security interests. Any securities involved along the way aren't the focus of the case.

Pls.' July 30, 2007 Br. at 6 and n.3.

Horattas relies on case law interpreting the "in connection with" language that is found in Securities and Exchange Commission ("SEC") Rule 10b-5.[12]

Consistent with Horattas' argument on this score, at least six circuits have held, in published decisions, that the meaning of 'in connection with' in SLUSA and Rule 10b-5 is the same. *See Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.d3 25, 34-36 (2d Cir. 2005), *overruled on other grounds*, 547 U.S. 71 (2006); *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 299 (3d Cir. 2005); *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 482 (7th Cir. 2005), *vac'd o.g. and remanded*, – U.S. –, 126 S.Ct. 2145 (2006); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596-97 (8th Cir. 2002); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir. 2002), *amended o.g.*, 320 F.3d 905 (9th Cir. 2003); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342-43 (11th

---

[12] SLUSA's preclusion provision, 15 U.S.C. § 77p(b), draws its language almost verbatim from Rule 10b-5, which is codified at 17 C.F.R. § 240.10b-5. That regulation is in turn based on § 10(b) of the 1934 Securities Act, which is codified at 15 U.S.C. § 78j(b). *Kircher*, 403 F.3d at 482.

Cir. 2002).

Citigroup has not identified any Circuit decisions, published or unpublished, that take a contrary view, nor has the court located any. Moreover, other district courts in our circuit have followed this seemingly unanimous consensus of persuasive authority. *See, e.g., French v. First Union Securities, Inc.*, 209 F. Supp.2d 818, 824 (M.D. Tenn. 2002) (Nixon, Senior J.); *Burns v. Prudential Secs.*, 116 F. Supp.2d 917, 923 (N.D. Ohio 2000) (Carr, J.)

For two reasons, the court also joins this consensus of persuasive authority (equating the SLUSA and Rule 10b-5 definitions of "in connection with"). First, under general principles of statutory construction, as the Eleventh Circuit pointed out in concluding that SLUSA' "in connection with" language means the same as Rule 10b-5's identical language, "where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Riley*, 292 F.3d at 1342 (internal quotation marks and alterations omitted); *see also Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When . . . judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well."); *Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the prior interpretation given to the incorporated law, at least insofar as it affects the new statute.").

The second reason for giving the same meaning to the phrase "in connection with" in both places is more specific to SLUSA's purpose and the context in which it was enacted. As the Seventh Circuit pointed out in concluding that SLUSA' "in connection with" language means the same as

Rule 10b-5's identical language,

> SLUSA is designed to prevent plaintiffs from migrating to state court in order to evade rules for federal securities regulation in the Private Securities Litigation Reform Act of 1995 [PSLRA].  SLUSA can do its job only if subsection (b) [of 15 U.S.C. § 77p] covers those claims that engage Rule 10b-5 (and thus come within the 1995 statute) if presented directly under federal law; this is why SLUSA borrows the Rule's language.

*Kircher*, 403 F.3d at 482; *see also Falkowski*, 309 F.3d at 1129 ("SLUSA should . . . be viewed as part of the remedial package of federal securities laws and should be construed accordingly.").

Until recently, federal decisions interpreting SLUSA and Rule 10b-5 might have led this court to conclude that Horattas' complaint does <u>not</u> allege the requisite dishonest behavior *in connection with* the purchase or sale of the securities in the cemeteries' Citigroup trust accounts. The Supreme Court's 2006 decision in *Dabit*, however, now leads to the contrary conclusion.

Under the pre-*Dabit* case law on which Horattas relies, the federal courts did not deem a misrepresentation or deceptive device to be "in connection with" the purchase or sale of a security unless it misled the plaintiff about the value of a security that he sold or the value of consideration that he received in return for such a sale. *See Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 108, 109 (2d Cir. 1986) ("Saxe did not allege that appellees misled him concerning the value of the securities he sold or the consideration he received in return. * * * Accordingly, [the judge] was correct in holding that the link between the sale of those securities and the opening of the commodities account was too tenuous to satisfy the "in connection with" requirement of Rule 10b-5.").

On a related note, Horattas contends that any misrepresentation or deceptive device could

not have deceived the plaintiffs about the value of any security that they sold or the value of any consideration they received in return for such a sale, *because the plaintiffs simply never bought or sold any securities.* This court has indeed located pre-March 2006 authority, in addition to that cited by the plaintiffs, holding that "'in the absence of a plaintiff or class of plaintiffs who purchased or sold a covered security, removal is not authorized by [SLUSA].'" *Shen v. Bohan*, 2002 WL 31962136, at *3 (C.D. Cal. Oct. 7, 2002) (quoting *Shaev v. Claflin*, No. C-01-0009, 2001 WL 548567, at *6 (N.D. Cal. May 17, 2001)); *accord Grabow v. Pricewaterhousecoopers LLP*, 313 F. Supp.2d 1152, 1155 (N.D. Okla. 2004) ("SLUSA does not preempt a state law claim where the plaintiff does not allege that defendant's misrepresentations caused *him or her* to buy or sell a security.") (emphasis added) (citing, *inter alia*, *Meyer v. Putnam Int'l Voyager Fun*, 220 F.R.D. 127 (D. Mass. 2004) and *Gordon v. Buntrock*, No. 00-cv-303, 2000 WL 556763 (N.D. Ill. Apr. 28, 2000)).

**But no matter how persuasive Horattas's arguments might have been a few years ago, they are now undermined by the broad reading of "in connection with" announced by the Supreme Court in *Dabit*.[13] Citigroup is correct that the Supreme Court endorsed a view of SLUSA's "in connection with" requirement that encompasses the instant claims.** The Supreme Court held as follows:

---

13

*Cf. In re Edward Jones Holders Lit.*, 453 F. Supp.2d 1210, 1214 (C.D. Cal. 2006) ("[T]hey argue that Defendant's allegedly wrongful conduct – the acceptance of the retention kickbacks and failure to inform Plaintiffs, the Class and the public about the same – does not involve fraud 'in connection with the purchase or sale of the securities.' *Although previously persuasive to the court*, Plaintiff's arguments are no longer tenable given the Supreme Court's recent holding in *Dabit* . . . .") (emphasis added).

> [T]he Court of Appeals for the Second Circuit limited the reach of the private right of action under Rule 10b-5. In *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952), [it] upheld dismissal of a suit brought on behalf of a corporation and a class of stockholders alleging that fraud "in connection with" a director's sale of his controlling block of stock to third parties violated Rule 10b-5. The court held that the rule could only be invoked by a purchaser or seller of securities to remedy fraud associated with his or her own sale or purchase of securities, and did not protect those who neither purchased nor sold the securities in question but were instead injured by corporate insiders' sales to third parties. [L]ater cases treated [*Birnbaum's*] holding as a standing requirement.
>
> By the time this Court confronted the question, literally hundreds of lower court decisions had accepted *Birnbaum*'s conclusion that the plaintiff class for purposes of § 10b and Rule 10b-5 private damages actions is limited to purchasers and sellers. *Blue Chip Stamps*, 421 U.S., at 731-32 . . . . * * *
>
> [F]ollowing judicial precedent rather than the many commentators who had criticized *Birnbaum* rule, the Court in *Blue Chip Stamps* chose to limit the private remedy [under § 10b and Rule 10b-5].
>
> * * *
>
> Respondent urges that the operative language must be read narrowly to encompass (and therefore preempt) only those actions in which the purchaser-seller requirement of *Blue Chip Stamps* is met. But . . . [t]he *Blue Chip Stamps* Court purported to define the scope of a private right of action under Rule 10b-5 – not to define the words "in connection with the purchase or sale."
>
> Moreover, when this Court *has* sought to give meaning to the phrase in the context of § 10b and Rule 10b-5, it has espoused a broad interpretation. A narrow construction would not, as a matter of first impression, have been unreasonable; one might have concluded that an alleged fraud "in connection with" a purchase or sale of securities only when the plaintiff himself is defrauded into purchasing or selling particular securities. After all, that was the interpretation adopted by the panel in the *Birnbaum* case. But this Court, in early cases like *Superintendent of Ins. of NY v. Bankers Life & Cas. Co.*, 404 U.S. 6 . . . (1971), and most recently in *SEC v. Zandford*, 535 U.S. 813, 820 . . . (2002), has rejected that view. *Under our precedents, it is enough that the fraud alleged "coincide" with a securities transaction – whether by the plaintiff or by someone else. See O'Hagan*, 521 U.S., at 651 . . . . The requisite showing, in other words, is "deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller."

*Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71, 79-80, 84, 85 (2006) (other internal

citations and quotation marks omitted) (emphasis added).

-18-

*Dabit* compels the court to conclude that because the misrepresentation and deception alleged by Horattas "coincided with" a series of covered-security transactions in and from the cemetery defendants' Citigroup accounts, the misconduct occurred "in connection with" the purchase or sale of a covered security, notwithstanding that the plaintiffs themselves did not buy or sell any securities and were not deceived about the value of any securities bought or sold. *See US Mortgage, Inc. v. Saxton*, No. 04-17494, – F.3d –, 2007 WL 2027370, at *8 (9th Cir. July 13, 2007) ("While plaintiffs themselves did not purchase or sell any of the publicly traded shares of Saxton, *Dabit* does not require that they do so. They have alleged fraud that 'coincide[s] with' the purchase or sale of securities, and SLUSA therefore preempts their claim."); *Sofonia v. Principal Life Ins. Co.*, 465 F.3d 873, 879 n.4 (8th Cir. 2006) ("it is not 'the identity of the plaintiffs,' but the alleged conduct of the defendants that 'determines whether the complaint alleges fraud in connection with the purchase or sale of securities.' Accordingly, Sofonia cannot avoid SLUSA's application by including some nonpurchasers or nonsellers of covered securities in the putative class.") (quoting *Dabit*, 126 S.Ct. at 1515).[14]

Moreover, the presence of allegations of negligent management of the securities or imprudent investment of the trust funds cannot help Horattas escape the broad preemptive bar of SLUSA under these circumstances. *See Bradfisch v. Templeton Funds, Inc.*, 179 F. App'x 973 (7th Cir. 2006) (per curiam) (Easterbrook, Ripple, & Wood, JJ.) ("Although the plaintiffs maintain that *Dabit* does not control because (in their view) the defendant funds have been negligently managed,

---

[14]

*See also Rabin v. JPMorgan Chase Bank, N.A.*, No. 06-C-5452, 2007 WL 2295795, at *7 (N.D. Ill. Aug. 3, 2007) ("[P]laintiffs seek to avoid the SLUSA preemption by arguing that they were beneficiaries and therefore, did not purchase or sell shares of the Fund in response to the misrepresentations and omissions. However, in rejecting this same argument, *Dabit* . . . .").

they have not sought relief through derivative litigation and so cannot take advantage of the exception for that kind of suit in [SLUSA].").

Consequently, SLUSA provided a basis for removal to federal court and the preclusion of their state-law class claims, and it mandates the dismissal with prejudice of Horattas' putative class complaint.

## VI. CONCLUSION

For the foregoing reasons, defendant Citigroup Financial Markets, Inc. n/k/a Smith Barney Citigroup's motion to dismiss the complaint on the ground that it is precluded under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(b) [**docket #29**] is **GRANTED.**

The complaint is **DISMISSED WITH PREJUDICE.**

Non-party Mark Zausmer's motion to intervene and to dismiss the named plaintiffs as parties [**docket #22**] is **DENIED AS MOOT.**

Any other pending motions are **DENIED AS MOOT.**

This case is **TERMINATED.**

This is a final and appealable order.

**IT IS SO ORDERED** this 12th day of September 2007.

/s/ Paul L. Maloney
_____

Honorable Paul L. Maloney
United States District Judge